No. 21-16809

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

JAMES CUPP; LAWRENCE "WOLF" HAVEN

*Plaintiffs-Appellants*,

v.

KAMALA HARRIS, ET AL

*Defendant-Appellee*.

On Appeal from the United States District Court
for the Easter District of California
No. 16-cv-00523-TLN-KJN
Hon. Troy L. Nunley

_____

## APPELLANTS' OPENING BRIEF

_____

Gary W. Gorski (SBN 166526)
***VETERANS LAW CENTER***
3017 Douglas Blvd. Suite 150
Roseville, CA 95661
(406) 266-1000 / (775) 720-1000 (cell)
CivilRightsAttorney@BlackWolfLaw.com
www.veteranslawcenter.com

Daniel M. Karalash (SBN 176422)
***STRATEGIC LAW COMMAND***
3017 Douglas Blvd. Suite 150
Roseville, CA 95661
(916) 787-1234 / (916) 223-9884 (cell)
dan@stratlaw.org / www.stratlaw.org
***Attorneys for Appellants***

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................... iv

INTRODUCTION ....................................................................... 1

JURISDICTIONAL STATEMENT .......................................... 4

STATUTORY AUTHORITIES ................................................. 4

ISSUES PRESENTED .............................................................. 19

STATEMENT OF THE CASE.................................................. 22

    A.     Slungshot ...................................................... 24

    B.     Law Enforcement Gun Release (LEGR) ...................................... 26

    C.     Large-Capacity Magazine (LCM) ................................................. 27

    D.     The Handgun Rostering Program, Unsafe Handgun List and Microstamping................................................................... 28

    E.     Carrying Concealed Weapons (CCW) and Open Carry Weapon (OCW) ....................................................... 30

    F.     Procedural History and the District Court's Opinions ................. 30

SUMMARY OF THE ARGUMENT ........................................... 33

ARGUMENT ............................................................................. 36

I.     STANDARD OF REVIEW................................................. 38

    a.  De Novo Review on The Claims Dismissed ................................ 38

    b.  Abuse Of Discretion for Denial of a Preliminary Injunction ........ 39

II.    THE INDIVIDUAL PLAINTIFFS' STANDING IS SECURED...... 40

i

III. THE SECOND AMENDMENT GUARANTEES A FUNDAMENTAL RIGHT TO OWN, POSSESS, CARRY, PURCHASE, AND ACQUIRE HANDGUNS, FIREARMS, AMMUNITION, MAGAZINES AND NON-LETHAL AND LETHAL ARMS OF ALL TYPES WHICH ARE COMMONLY USED FOR PERSONAL SELF-DEFENSE OR MILITIA PURPOSES OR BOTH ...................................................................... 43

IV. CALIFORNIA'S STATUTORY AND REGULATORY SCHEME REGARDING ARMS IN COMMON USE VIOLATES THE SECOND AMENDMENT ................................................................................. 47

A. Sections 22210 ("**Slungshot**") Violates the Second Amendment in That A "Slungshot" Is Arm in Common Use at The Time of Ratification, Is More of a Curio And Relic, But Still a Capable Arm to Be Used for Self-Defense as well as Curio for Expressive Purposes ....................... 47

    a. Sections 22210 Violates the Second As-Written ................ 47

    b. Sections 22210 Violates the Second As-Applied ............... 47

    c. To the extent that Section 22210 Violates the Second Amendment, its companion, Section 18010 Violates the Second Amendment and the Taking Clause .......................................................... 48

B. Section 33850 ("**LEGR**") Violates the Second Amendment in That It Unnecessarily Places a Burden on Anyone Who Had Their Arms, Magazines and Ammunition Illegally, Improperly or Mistakenly Seized by Law Enforcement ...................................................................... 48

C. Sections 16740 & 32310(c) (**Large-Capacity Magazine or "LCM"**) Violates the Second Amendment .................................................. 49

D. Defendant's **Handgun Ban** and **Rostering Program** Violates the Second Amendment by Restricting Access to Handguns of the Kind in Common Use for Traditional Lawful Purposes and for Service in the Militia ............................................................................................. 50

E. Defendant's Carrying Ban (**Open and Concealed Carry of Arms in General, and Firearms in particular**) Burdens the Second Amendment Right to Bear Arms for Purposes of Confrontation and Self-Defense ...................................................................................................... 51

V.     DEFENDANT'S HANDGUN ROSTERING PROGRAM VIOLATES THE FOURTEENTH AMENDMENT'S EQUAL PROTECTION CLAUSE ...................................................................................................... 52

VI.     DEFENDANT'S CARRYING CONCEALED WEAPON EXEMPTION FOR HONORABLY RETIRED CALIFORNIA PEACE OFFICERS VIOLATES THE FOURTEENTH AMENDMENT'S EQUAL PROTECTION CLAUSE .................................................. 52

VII.     DEFENDANT'S LARGE-CAPACITY MAGAZINE EXEMPTION FOR HONORABLY RETIRED CALIFORNIA PEACE OFFICERS VIOLATES THE FOURTEENTH AMENDMENT'S EQUAL PROTECTION CLAUSE

VIII.   SECTION 33850 LEGR PROCESS IS AN UNCONSTITUTIONAL TAKING ............................................................................... 53

IX.     SECTION 33850 LEGR PROCESS VIOLATES THE DUE PROCESS CLAUSE ................................................................................. 53

X.     PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS AND PLAINTIFFS HAVE ALREADY SUFFERED HARM IN PERPETUITY, AND WILL SUFFER IRREPARABLE HARM IF THE COURT DENIES RELIEF ............................................................................... 54

CONCLUSION ............................................................................... 55

STATEMENT OF RELATED CASES ......................................... 56

CERTIFICATE OF COMPLIANCE ............................................ 57

CERTIFICATE OF SERVICE

iii

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Caetano v. Massachusetts,*
 577 U.S. 411 (2016) .................................. 3, 19, 21, 38, 39, 46, 47 *passim*

*District of Columbia v. Heller,*
 554 U.S. 570 (2008)..................................................3, 19, 34, 36-39, 46, 49

*McDonald v. City of Chicago*, 561 U.S. 742 (2010) .................. 3, 19, *passim*

*MedImmune, Inc. v. Genentech, Inc*, 549 U.S. 118 (2007) ........................ 41

*Pena v. Lindley*, 898 F.3d 969, 975 (9th Cir. 2018) ............................ 20, 36

*McDougall v. Cty. of Ventura*, No. 20-56220 (9th Cir. Jan. 20, 2022) ......... 1

*United States v. Verdugo-Urquidez,* 494 U.S. 259 (1990) ........................... 2

*Silvester v. Becerra*, No. 17-342, 2018 WL 943032 (U.S. Feb. 20, 2018)
(Thomas, J., dissenting from denial of certiorari)........................................... 4

*Young v. Hawaii*, 992 F.3d 765, 783 (9th Cir. 2021) (en banc), petition for cert.
filed, (U.S. May 11, 2021) (No. 20-1639) ................................................... 20

*Fyock v. Sunnyvale*, 779 F.3d 991 (9th Cir. 2015) ...................................... 20

*Duncan v. Bonta*, No. 19-55376, 2021 U.S. App. LEXIS 35256
(9th Cir. Nov. 30, 2021)................................................................................. 20

*Wilson v. Lynch*, 835 F.3d 1083 (9th Cir. 2016) ......................................... 52

*Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307 (1976) ...................................... 52

*Horne v. Dep't of Agric.*, 576 U.S. 351 (2015)............................................ 53

iv

**Federal Statutes**

28 U.S.C. § 1331 ................................................................................................ 4
28 U.S.C. § 1291 ................................................................................................ 4
28 U.S.C. § 1342 ................................................................................................ 4
42 U.S.C. § 1983 ................................................................................................ 4

**State Statutes**

Cal. Penal Code § 16740 .................................................. 8, 21, 27, 41, 42, 49
Cal. Penal Code § 18010 .................................................. 5, 21, 27, 41, 42, 49
Cal. Penal Code § 22210 ........................................... 5, 24, 32, 45, 47, 48, 50
Cal. Penal Code § 22290 .................................................. 5, 21, 27, 41, 42, 49
Cal. Penal Code § 25400 ............................................................... 17, 18, 42
Cal. Penal Code § 25450 ....................................................................... 18, 42
Cal. Penal Code § 25850 ....................................................................... 18, 42
Cal. Penal Code § 26300 ....................................................................... 11, 18
Cal. Penal Code § 31615 ................................................................... 11, 41, 42
Cal. Penal Code § 31720 ............................................................................. 11
Cal. Penal Code § 31910 .................................................. 9, 28, 41, 42, 50
Cal. Penal Code § 32000 ............................................................................. 12
Cal. Penal Code § 32310 .................................................. 8, 21, 27, 28, 41, 42, 49
Cal. Penal Code § 33850 ........................................... 6, 7, 21, 26, 27, 48, 53
Cal. Penal Code § 33855 ......................................................................... 6, 48
Cal. Penal Code § 33860 ......................................................................... 7, 48
Cal. Penal Code § 33880 ............................................................................. 8

**INTRODUCTION**

This case comes before this Court as an appeal from final orders granting Defendant's motion to dismiss for failure to state a claim and lack of standing, and a denial of a preliminary injunction and declaratory relief. (ER-4, Order of September 28, 2021; ER-47, Order of September 24, 2020; ER-83, Order of October 9, 2018, denying request for preliminary injunction; ER-85, Order of September 21, 2018.)

Plaintiffs filed a Second Amended Complaint [SAC] (ER-185.), Third Amended Complaint [TAC] (ER-61.) and a Fifth Amended Complaint [FAC] (ER-15.) which are relevant to this appeal. The pleadings present claims against Defendant for violations of the United States Constitution, specifically violations of the Second, Fourth, Fifth and Fourteenth Amendments relating to an <u>as-written</u> and <u>as-applied</u> California's statutory scheme regulating the possession and carrying of arms of all types, including commonly used long rifles and handguns throughout the history of the United States.

In addition, Plaintiff also asserted a *per se* violation of the Equal Protection clause of the Fourteenth Amendment in that the ever expanding group of law enforcement officers and retirees are exempted from the very laws they enforce against "the People", and especially veterans who should have been in the same class as other state service retirees. See *McDougall v. Cty. of Ventura*, No. 20-

1

56220 (9th Cir. Jan. 20, 2022) for a step in the right direction pointing out how

selective covid restrictions targeted gun dealers.

As the Supreme Court has noted,

> … "**the people**" seems to have been a term of art employed in select parts of the Constitution. The Preamble declares that the Constitution is ordained and established by "**the People** of the United States." The Second Amendment protects "the right of **the people** to keep and bear Arms," and the Ninth and Tenth Amendments provide that certain rights and powers are retained by and reserved to "**the people**." See also U.S. Const., Amdt. 1 ("Congress shall make no law . . . abridging . . . the right of the people peaceably to assemble") (emphasis added); Art. I, § 2, cl. 1 ("The House of Representatives shall be composed of Members chosen every second Year by **the People** of the several States") (emphasis added). While this textual exegesis is by no means conclusive, it suggests that "**the people**" protected by the Fourth Amendment, and by the First and **Second Amendments**, and to whom rights and powers are reserved in the Ninth and Tenth Amendments, refers to a class of persons who are part of **a national community** or who have otherwise developed sufficient **connection with this country** to be considered part of that community. See *United States ex rel. Turner v. Williams,* 194 U.S. 279, 292 (1904) (Excludable alien is not entitled to First Amendment rights, because "he does not become one of the people to whom these things are secured by our Constitution by an attempt to enter forbidden by law"). The language of these Amendments contrasts with the words "person" and "accused" used in the Fifth and Sixth Amendments regulating procedure in criminal cases.

*United States v. Verdugo-Urquidez,* 494 U.S. 259, **265** (1990) **(**emphasis added).

The text of the Constitution presumes that "the People" are reasonable, and

that Government is a "necessary evil" to be curtailed and limited. Unlike

California, the majority of the population of the United States are armed, and

permitted to purchase, transport and carry commonly used handguns and rifles. (ER-174 Cupp Decl. ¶s 68-69; ER-194 SAC ¶s 74-75; ER-74 TAC ¶ 95.)

California is of the belief that when "the People" become a California citizen or just a person passing through; they forfeit their Second Amendment right at the state line as though "the People" are no longer part of a "a national community" or have a "connection to this country." Prior decisions of this Circuit, which conflict with *District of Columbia v. Heller*, 554 U.S. 570 (2008), *McDonald v. City of Chicago*, 561 U.S. 742 (2010) and *Caetano v. Massachusetts*, 577 U.S. 411 (2016) (per curiam) have emboldened California in its quest to nullify the Second Amendment – what California has forgotten is the fact the Bill of Rights is to prevent mob rule.

Perhaps California got is cue from Chief Justice Taney's opinion, "those who sought to retain the institution of slavery . . . [began] to eliminate more and more of the basic liberties of slaves, free blacks, and white abolitionists." See *McDonald*, 561 U.S. at 843–44 (Thomas, J., concurring in part and concurring in the judgment). And the pervasive fear of slave rebellions "led Southern legislatures to take particularly vicious aim at the rights of free blacks and slaves to speak or to keep and bear arms for their defense." *Id.* at 845; see also Act of Dec. 23, 1833, § 7, 1833 Ga. Acts 226, 228 ("[I]t shall not be lawful for any free person of colour in this state, to own, use, or carry firearms of any description whatever.").

3

California is very also mindful to treat the Second Amendment differently from other individual constitutional rights. To California, the Second Amendment is "a second-class right," *McDonald*, 561 U.S. at 780, and a "constitutional orphan," *Silvester v. Becerra*, No. 17-342, 2018 WL 943032, at 8 (U.S. Feb. 20, 2018) (Thomas, J., dissenting from denial of certiorari).

## JURISDICTIONAL STATEMENT

Subject matter jurisdiction in the District Court was based on 28 U.S.C. §§ 1331 & 1342. These sections provide for jurisdiction to hear all actions authorized by 42 U.S.C. § 1983. This Court has jurisdiction over the appeal from the final orders on motions to dismiss in favor of Defendant and against Plaintiffs, filed on September 28, 2021 (ER-4), September 24, 2020 (ER-47) and September 21, 2018 (ER-83) respectively, under 28 U.S.C. § 1291. Judgment was entered on October 1, 2021. (ER-3.) Notice of Appeal timely filed on October 26, 2021. (ER-267.)

## STATUTORY AUTHORITIES

Relevant California Penal Code Sections are as follows [emphasis added in **bold**][1]:

------

[1] All statutory provisions reference the California Penal Code by the symbol "§" only. If the section cited does not refer to the California Penal Code, it will be denoted.

# ARGUMENT A.: SLUNGSHOT[2]

### § 22210. Saps and similar weapons; Punishment

Except as provided in Section 22215 and Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any person in this state who manufactures or causes to be manufactured, imports into the state, keeps for sale, or offers or exposes **for sale**, or who gives, lends, or **possesses** any leaded cane, **or any instrument or weapon of the kind commonly known as** a billy, blackjack, sandbag, sandclub, sap, or **slungshot**, is punishable by imprisonment in a county jail not exceeding one year or **imprisonment** pursuant to subdivision (h) of Section 1170.

### § 22290. Saps and similar weapons as nuisance

Except as provided in Section 22215 and in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any leaded cane or any instrument or weapon of the kind commonly known as a billy, blackjack, sandbag, sandclub, sap, or slungshot is a nuisance and is subject to Section 18010.

### § 18010. Weapons constituting nuisances; Confiscation, destruction; Enjoinment of manufacture and importation

(a) The Attorney General, a district attorney, or a city attorney may bring an action to enjoin the manufacture of, importation of, keeping for sale, offering or exposing for sale, giving, lending, **or possession** of, any item that **constitutes a nuisance under any of the** following provisions:

\*\*\*

---

[2] A typographical error occurred in the pleadings in reference to Cal. Penal Code § 22210. Though correctly cited in the Second Amended Complaint, it was incorrectly identified as "12210, it was cited correctly at ¶ 230, 244, and 257, in addition to being incorporated into the pleading by way of the actual criminal complaint at ER-221. It can also be found at ER-80 of the Third Amended Complaint. The mistake was corrected in the Fifth Amended Complaint.

(10) Section 22290, relating to a leaded cane or an instrument or weapon of the kind commonly known as a billy, blackjack, sandbag, sandclub, sap, or **slungshot**.

\*\*\*

(b) The weapons described in subdivision (a) **shall be subject to confiscation and summary destruction whenever found within the state**.

## ARGUMENT B.: LAW ENFORCEMENT GUN RELEASE (LEGR) PROCESS

### § 33850. Application for return; Misdemeanor

(a) Any person who claims title to any **firearm, ammunition feeding device, or ammunition** that is in the custody or control of a court or law enforcement agency and who wishes to have the firearm, ammunition feeding device, or ammunition returned **shall make application for a determination by the Department of Justice as to whether the applicant is eligible to possess a firearm, ammunition feeding device, or ammunition**. The application shall be submitted electronically via the California Firearms Application Reporting System (CFARS) and shall include the following:

(1) The applicant's name, date and place of birth, gender, telephone number, and complete address.

(2) Whether the applicant is a United States citizen. If the applicant is not a United States citizen, the application shall also include the applicant's country of citizenship and the applicant's United States Citizenship and Immigration Services-assigned number or I-94 number.

(3) If the seized property is a firearm, the firearm's make, model, caliber, barrel length, type, country of origin, and serial number, provided, however, that if the firearm is not a handgun and does not have a serial number, identification number, or identification mark assigned to it, there shall be a place on the application to note that fact.

\*\*\*

### § 33855. Requirements for return

A law enforcement agency or court that has taken custody of any firearm, ammunition feeding device, or

ammunition shall not return the firearm, ammunition feeding device, or ammunition to any individual unless all of the following requirements are satisfied:

(a) The individual presents to the agency or court notification of a determination by the department pursuant to Section 33865 that the person is eligible to possess a firearm, ammunition feeding device, or ammunition.

(b) If the seized property is a firearm and the agency or court has direct access to the Automated Firearms System, the agency or court has verified that the firearm is not listed as stolen pursuant to Section 11108.2, and that the firearm **has been recorded in the Automated Firearms System in the name of the individual who seeks its return**.

(c) If the firearm has been reported lost or stolen pursuant to Section 11108.2, a law enforcement agency shall notify the owner or person entitled to possession pursuant to Section 11108.5. However, **that person shall provide proof of eligibility to possess a firearm** pursuant to Section 33865.

(d) This section does not prevent the local law enforcement agency from charging the rightful owner or person entitled to possession of the firearm the **fees** described in Section 33880. However, an individual who is applying for a background check to retrieve a firearm that came into the custody or control of a court or law enforcement agency pursuant to Section 33850 shall be exempt from the fees in Section 33860, provided that the court or agency determines the firearm was reported stolen to a law enforcement agency prior to the date the firearm came into custody or control of the court or law enforcement agency, or within five business days of the firearm being stolen from its owner. The court or agency shall notify the Department of Justice of this fee exemption in a manner prescribed by the department.

(e) This section shall become operative on July 1, 2020.

*§ 33860. Fee per request*

(a) The Department of Justice shall establish a fee of **twenty dollars ($20) per request for return of a firearm, ammunition feeding device, or any quantity of ammunition plus a three-dollar ($3) charge for each additional firearm** being processed as part of the request to return a firearm, to cover its reasonable costs for processing applications submitted pursuant to this chapter.

7

\*\*\*

*§  33880. Fee for seizure, impounding, storage, or release of firearm, ammunition feeding device, or ammunition*

(a) A city, county, or city and county, or a state agency may adopt a regulation, ordinance, or resolution **imposing a charge** equal to its administrative costs relating to the seizure, impounding, storage, or release of any firearm, ammunition feeding device, or ammunition.

\*\*\*

(3) The charges shall be in addition to any other charges authorized or imposed pursuant to this code.

\*\*\*

## ARGUMENT C.: LARGE-CAPACITY MAGAZINE (LCM)

*§  16740. "Large-capacity magazine"*

As used in this part, "**large-capacity magazine**" means any ammunition feeding device with the capacity to accept **more than 10 rounds**, but shall not be construed to include any of the following:

(a) **A feeding device** that has been permanently altered so that it cannot accommodate more than 10 rounds.

(b) A .22 caliber tube ammunition feeding device.

(c) A tubular magazine that is contained in a lever-action firearm.

*§  32310. Large-capacity magazines; Prohibition; Removal and surrender requirements; Punishment*

\*\*\*

(c) Except as provided in Article 2 (commencing with Section 32400) of this chapter and in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, commencing July 1, 2017, **any person in this state who possesses any large-capacity magazine, regardless of the date the magazine was acquired, is guilty of an infraction** punishable by a fine not to exceed one hundred dollars ($100) per large-capacity

8

magazine, or is **guilty of a misdemeanor** punishable by a fine not to exceed one hundred dollars ($100) per large-capacity magazine, by **imprisonment in a county jail not to exceed one year**, or by both that fine and imprisonment.

(d) Any person who may not lawfully possess a large-capacity magazine commencing July 1, 2017, shall, prior to July 1, 2017:

(1) **Remove the large-capacity magazine from the stat**e.

(2) **Sell** the large-capacity magazine to a licensed firearms dealer; or

(3) **Surrender** the large-capacity magazine to a law enforcement agency for destruction.

## ARGUMENT D.: Handgun Ban, Unsafe Handgun List and Microstamping

*§ 31910. "Unsafe handgun"*

As used in this part, "unsafe handgun" means **any pistol, revolver,** or other firearm **capable of being concealed** upon the person, for which any of the following is true:

(a) For a revolver:

(1) It does not have a safety device that, either automatically in the case of a double-action firing mechanism, or by manual operation in the case of a single-action firing mechanism, causes the hammer to retract to a point where the firing pin does not rest upon the primer of the cartridge.

(2) It does not meet the firing requirement for handguns.

(3) It does not meet the drop safety requirement for handguns.

(b) For a pistol:

(1) It **does not have a positive manually** operated safety device, as determined by standards relating to imported guns promulgated by the federal Bureau of Alcohol, Tobacco, Firearms and Explosives.

(2**) It does not meet the firing requirement for handguns**.

(3) It does not meet the **drop safety** requirement for handguns.

(4) Commencing July 1, 2022, for all centerfire semiautomatic pistols that are not already listed on the roster pursuant to Section 32015, it does not have a **chamber load indicator.**

(5) Commencing July 1, 2022, for all centerfire or rimfire semiautomatic pistols that are not already listed on the roster pursuant to Section 32015, it does not have a **magazine disconnect mechanism if it has a detachable magazine**.

(6)(A) Commencing July 1, 2022, for **all semiautomatic pistols t**hat are not already listed on the roster pursuant to Section 32015, it is not designed and equipped with a **microscopic array of characters used to identify the make, model, and serial number of the pistol, etched or otherwise imprinted in one or more places on the interior surface or internal working parts of the pistol, and that are transferred by imprinting on each cartridge case when the firearm is fired.**

(B) The Attorney General may also approve a method of **equal or greater reliability and effectiveness in identifying the specific serial number** of a firearm from spent cartridge casings discharged by that firearm than that which is set forth in this paragraph, to be thereafter required as otherwise set forth by this paragraph where the Attorney General certifies that this new method is also unencumbered by any patent restrictions. Approval by the Attorney General shall include notice of that fact via regulations adopted by the Attorney General for purposes of implementing that method for purposes of this paragraph.

(C) **The microscopic array of characters** required by this section shall not be considered the name of the maker, model, manufacturer's number, or other mark of identification, including any distinguishing number or mark assigned by the Department of Justice, within the meaning of Sections 23900 and 23920.

(7) The Department of Justice shall, for each **semiautomatic pistol newly added to the roster pursuant** to Section 32015, **remove from the roster** exactly **three semiautomatic** pistols lacking one or more of the applicable features described in paragraphs (4),

(5), and (6) of subdivision (b) and added to the roster before July 1, 2022. Notwithstanding those paragraphs, **each semiautomatic pistol removed from the roster pursuant to this subdivision shall be considered an unsafe** handgun. **The Attorney General shall remove** semiautomatic pistols from the roster pursuant to this subdivision in reverse order of their dates of addition to the roster, beginning with the semiautomatic pistol added to the roster on the earliest date and continuing until each semiautomatic pistol on the roster includes each of the applicable features described in those paragraphs.

### § 31615. Transactions without valid firearm safety certificate prohibited

(a) **A person shall not do either of the following**:

(1) **Purchase or receive** any firearm, except an antique firearm, without a valid firearm safety certificate, except that in the case of a handgun, an unexpired handgun safety certificate may be used.

(2**) Sell, deliver, loan, or transfer** any firearm, except an antique firearm, to any person who does not have a valid firearm safety certificate, except that in the case of a handgun, an unexpired handgun safety certificate may be used.

(b) **Any person who violates subdivision (a) is guilty of a misdemeanor.**

(c) The provisions of this section are cumulative, and shall not be construed as restricting the application of any other law. However, an act or omission punishable in different ways by different provisions of this code shall not be punished under more than one provision.

(d) This section shall become operative on January 1, 2015.

### § 31720. Exception for transfer without valid firearm or handgun safety certificate to retiring peace officer

(a) Subdivision (a) of Section 31615 does not apply to the sale, delivery, or transfer of a firearm by a law enforcement agency to a **retiring peace officer** who is authorized to carry a firearm pursuant to Chapter 5 (commencing with Section 26300) of Division 5.

(b) Within 10 days of the date that a handgun, and commencing January 1, 2014, any firearm, is sold, delivered, or transferred to that retiring peace officer, the

11

name of the officer and the make, model, serial number, and other identifying characteristics of the firearm being sold, delivered, or transferred shall be entered into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency that sold, delivered, or transferred the firearm, provided, however, that if the firearm is not a handgun and does not have a serial number, identification number, or identification mark assigned to it, that fact shall be noted in AFS. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

*§ 32000. Punishment for manufacture, **import, sale, gift**, or loan of **unsafe handgun**; Exceptions [Effective January 1, 2022]*[3]

(a)(1) A person in this state who manufactures or causes to be manufactured, imports into the state for sale, keeps for sale, offers or exposes for sale, gives, or lends an unsafe handgun shall be punished **by imprisonment in a county jail not exceeding one year.**

(2) **The failure to report** to the Department of Justice in accordance with the provisions of paragraph (2) of subdivision (e) the sale or transfer of an unsafe handgun obtained pursuant to paragraph (4), (6), or (7) of subdivision (b) may be subject to a civil penalty not to exceed ten thousand dollars **($10,000).**

(3) In addition to any criminal penalty provided in paragraph (1), the unlawful sale or transfer of an unsafe handgun obtained pursuant to paragraph (4), (6), or (7) of subdivision (b) may be subject to a civil penalty not to exceed ten thousand **dollars ($10,000).**

(b) This section **shall not apply to any of the following**:

(1) The manufacture in this state, or importation into this state, of a prototype handgun when the manufacture or importation is for the sole purpose of allowing an independent laboratory certified by the Department of Justice pursuant to Section 32010 to conduct an independent test to determine whether that handgun is prohibited by Sections 31900 to 32110,

---

[3] This section has more than one version with varying effective dates.

inclusive, and, if not, allowing the department to add the firearm to the roster of handguns that may be sold in this state pursuant to Section 32015.

(2) The importation or lending of a handgun by employees or authorized agents of entities determining whether the weapon is prohibited by this section.

(3) Firearms listed as curios or relics, as defined in Section 478.11 of Title 27 of the Code of Federal Regulations.

(4) The sale or purchase of a handgun, if the handgun is sold to, or purchased by, the **Department of Justice, a police department, a sheriff's official, a marshal's office, the Department of Corrections and Rehabilitation, the Department of the California Highway Patrol, any district attorney's office**, any federal law enforcement agency, or the military or naval forces of this state or of the United States for use in the discharge of their official duties. **This section does not prohibit the sale to, or purchase by, sworn members of these agencies of a handgun.**

(5) The sale, purchase, or delivery of a handgun, if the sale, purchase, or delivery of the handgun is made pursuant to subdivision (d) of Section 10334 of the Public Contract Code.

(6) Subject to the limitations set forth in subdivision (c), the sale or purchase of a handgun for use as a service weapon, if the handgun is sold to, or purchased by, any of the following entities for use by, or sold to or purchased by, **sworn members of these entities** who have satisfactorily completed the POST basic course or, before January 1, 2021, have satisfactorily completed the firearms portion of a training course prescribed by the Commission on Peace Officer Standards and Training (POST) pursuant to Section 832, and who, as a condition of carrying that handgun, complete a live-fire qualification prescribed by their employing entity at least once every six months:

(A) The Department of **Parks and Recreation**.

(B) The Department of Alcoholic Beverage Control.

(C) The Division of Investigation of the **Department of Consumer Affairs**.

(D) The **Department of Motor Vehicles**.

13

(E) The Fraud Division of the **Department of Insurance**.

(F) The State Department of **State Hospitals**.

(G) The Department of **Fish and Wildlife**.

(H) The State Department of **Developmental Services**.

(I) The Department **of Forestry and Fire Protection**.

(J) A county probation department.

(K) The Los Angeles World Airports, as defined in Section 830.15.

(L) A **K-12 public school district** for use by a school police officer, as described in Section 830.32.

(M) A **municipal water district** for use by a park ranger, as described in Section 830.34.

(N) A county for use by a **welfare fraud** investigator or inspector, as described in Section 830.35.

(O) A county for use by **the coroner** or the deputy coroner, as described in Section 830.35.

(P) The **Supreme Court and the courts of appeal** for use by marshals of the Supreme Court and bailiffs of the courts of appeal, and coordinators of security for the judicial branch, as described in Section 830.36.

(Q) A **fire department** or fire protection agency of a county, city, city and county, district, or the state for use by either of the following:

(i) A member of an **arson-investigating unit,** regularly paid and employed in that capacity pursuant to Section 830.37.

(ii) A member other than a member of an arson-investigating unit, regularly paid and employed in that capacity pursuant to Section 830.37.

(R) The **University of California** Police Department, or the **California State University Police Departments**, as described in Section 830.2.

(S) A **California Community College** police department, as described in Section 830.32.

14

(T) **A harbor or port district** or other entity employing peace officers described in subdivision (b) of Section 830.33, the San Diego Unified Port District Harbor Police, and the Harbor Department of the City of Los Angeles.

(U) A local agency employing **park rangers** described in subdivision (b) of Section 830.31.

(V) **The Department of Cannabis Control.**

(7)(A) Subject to the limitations set forth in subdivision (c), the sale or purchase of a handgun, if the handgun is sold to, or purchased by, any of the following entities for use as a service weapon by the **sworn members of these entities** who have satisfactorily completed the POST basic course or, before January 1, 2021, have satisfactorily completed the firearms portion of a training course prescribed by the POST pursuant to Section 832, and who, as a condition of carrying that handgun, complete a live-fire qualification prescribed by their employing entity at least once every six months:

(i) The California **Horse Racing Board**.

(ii) The State Department of **Health Care Services**.

(iii) The State Department of **Public Health**.

(iv) The State Department **of Social Services.**

(v) The Department of Toxic **Substances Control**.

(vi) The Office of Statewide **Health Planning** and Development.

(vii) The Public **Employees' Retirement System.**

(viii) The Department of **Housing and Community Development.**

(ix) Investigators of the **Department of Business Oversight.**

(x) The Law Enforcement Branch of the Office of Emergency Services.

(xi) The California **State Lottery.**

(xii) The Franchise **Tax Board.**

(B) This paragraph does not authorize the sale to, or purchase by, sworn members of the entities specified in subparagraph (A) in a personal capacity.

(c)(1) Notwithstanding Section 26825, a person licensed pursuant to Sections 26700 to 26915, inclusive, shall not process the sale or transfer of an unsafe handgun between a person who has obtained an unsafe handgun pursuant to an exemption specified in paragraph (6) or (7) of subdivision (b) and a person who is not exempt from the requirements of this section.

(2)(A) A person who obtains or has use of an unsafe handgun pursuant to paragraph (6) or (7) of subdivision (b) shall, when leaving the handgun in an unattended vehicle, lock the handgun in the vehicle's trunk, lock the handgun in a locked container and place the container out of plain view, or lock the handgun in a locked container that is permanently affixed to the vehicle's interior and not in plain view.

(B) A violation of subparagraph (A) is an infraction punishable by a fine not exceeding one thousand dollars ($1,000).

(C) For purposes of this paragraph, the following definitions shall apply:

(i) "Vehicle" has the same meaning as defined in Section 670 of the Vehicle Code.

(ii) A vehicle is "unattended" when a person who is lawfully carrying or transporting a handgun in the vehicle is not within close proximity to the vehicle to reasonably prevent unauthorized access to the vehicle or its contents.

(iii) "Locked container" has the same meaning as defined in Section 16850.

(D) Subparagraph (A) does not apply to a peace officer during circumstances requiring immediate aid or action that are within the course of their official duties.

(E) This paragraph does not supersede any local ordinance that regulates the storage of handguns in unattended vehicles if the ordinance was in effect before January 1, 2017.

(d) Violations of subdivision (a) are cumulative with respect to each handgun and shall not be construed as restricting the application of any other law. However, an act or omission punishable in different ways by this

16

section and other provisions of law shall not be punished under more than one provision, but the penalty to be imposed shall be determined as set forth in Section 654.

(e)(1) The Department of Justice shall maintain a database of unsafe handguns obtained pursuant to paragraph (4), (6), or (7) of subdivision (b). This requirement shall apply retroactively to include information in the department's possession. The department may satisfy this requirement by maintaining this information in any existing firearm database that reasonably facilitates compliance with this subdivision.

(2) A person or entity that is in possession of an unsafe handgun obtained pursuant to paragraph (4), (6), or (7) of subdivision (b), shall notify the department of any sale or transfer of that handgun within 72 hours of the sale or transfer in a manner and format prescribed by the department. This requirement shall be deemed satisfied if the sale or transfer is processed through a licensed firearms dealer pursuant to Section 27545. A sale or transfer accomplished through an exception to Section 27545 is not exempt from this reporting requirement.

(3) By no later than March 1, 2021, the department shall provide a notification to persons or entities possessing an unsafe handgun pursuant to paragraph (4), (6), or (7) of subdivision (b) regarding the prohibitions on the sale or transfer of that handgun contained in this section. Thereafter, the department shall, upon notification of sale or transfer.

---

## ARGUMENT E.: CARRYING CONCEALED WEAPONS (CCW) and OPEN CARRY WEAPON

---

*§ 25400. Carrying concealed firearm; Carrying firearm openly in belt holster; Punishment*

(a) A person is guilty of carrying a concealed firearm when the person does any of the following:

(1) **Carries concealed within any vehicle** that is under the person's control or direction any pistol, revolver, or other firearm capable of being concealed upon the person.

(2) **Carries concealed upon the person** any pistol, revolver, or other firearm capable of being concealed upon the person.

(3) Causes to be carried concealed within any vehicle in which the person is an occupant any pistol, revolver, or other firearm capable of being concealed upon the person.

\*\*\*

### § 25450. *Peace officers exempted from crime*

As provided in this article, Section 25400 does not apply to, or affect, any of the following:

(a) Any peace officer, listed in Section 830.1 or 830.2, or subdivision (a) of Section 830.33, whether active or **honorably retired**.

(b) Any other duly appointed peace officer.

(c) **Any honorably retired peace officer** listed in subdivision (c) of Section 830.5.

(d) **Any other honorably retired peace** officer who during the course and scope of his or her appointment as a peace officer was authorized to, and did, carry a firearm.

\*\*\*.

### § 25850. *Carrying loaded firearm* in public; Punishment; Previous conviction; Prosecution under other section; Arrest without warrant

(a) A person is guilty of **carrying a loaded firearm** when the person carries a loaded firearm on the person or in a vehicle while in **any public place** or on **any public street** in an incorporated city or in any public place or on any public street in a prohibited area of unincorporated territory.

### § 26300. *Retired Peace Officer Carrying a Concealed and Loaded Firearm*

(a) Any peace officer listed in Section 830.1 or 830.2 or subdivision (c) of Section 830.5 who **retired** prior to January 1, 1981, is authorized to carry a concealed and loaded firearm if the agency issued the officer an identification certificate and the certificate has not been stamped as specified in Section 25470.

18

(b) Any peace officer employed by an agency and listed in Section 830.1 or 830.2 or subdivision (c) of Section 830.5 **who retired** after January 1, 1981, shall have an endorsement on the officer's identification certificate stating that the issuing agency approves the officer's carrying of a concealed and loaded firearm.

(c) (1) Any peace officer not listed in subdivision (a) or (b) who was authorized to, and did, carry a firearm during the course and scope of his or her appointment as a peace officer shall have an endorsement on the officer's identification certificate stating that the issuing agency approves the officer's carrying of a concealed and loaded firearm.

(2) This subdivision applies to a **retired reserve officer** if the retired reserve officer satisfies the requirements of paragraph (1), was a level I reserve officer as described in paragraph (1) of subdivision (a) of Section 832.6, and he or she served in the aggregate the minimum amount of time as specified by the retiree's agency's policy as a level I reserve officer, provided that the policy shall not set an aggregate term requirement that is less than 10 years or more than 20 years. Service as a reserve officer, other than a level I reserve officer prior to January 1, 1997, shall not count toward the accrual of time required by this section. A law enforcement agency shall have the discretion to revoke or deny an endorsement issued under this subdivision pursuant to Section 26305.

## ISSUES PRESENTED

*District of Columbia v. Heller*, 554 U.S. 570 (2008), *McDonald v. City of Chicago*, 561 U.S. 742 (2010) and *Caetano v. Massachusetts*, 577 U.S. 411 (2016) (per curiam) clearly state that the right to keep and bear arms applies not only to handguns, but to all instruments which can be used for self-defense. In *District of Columbia v. Heller*, the Supreme Court held that the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation," and that because handguns are typically possessed by law-abiding

citizens for lawful purposes," "a complete prohibition of their use is invalid." 554 U.S. 570, 592, 625, 629 (2008).

Despite the clarity and insistence of these teachings, the State of California, empowered by decisions of this circuit, incrementally moves towards a complete monopoly over the "individual" right to own, possess, keep and retain common arms. The issues for consideration are as follows:

1.      Whether the two-step inquiry for determining whether a regulation or law violates the Second Amendment as set forth in *Young v. Hawaii*, 992 F.3d 765, 783 (9th Cir. 2021) (en banc), petition for cert. filed, (U.S. May 11, 2021) (No. 20-1639); *Fyock v. Sunnyvale*, 779 F.3d 991 (9th Cir. 2015); *Pena v. Lindley*, 898 F.3d 969, 976 (9th Cir. 2018), *cert. denied sub nom. Pena v. Horan*, 141 S. Ct. 108, 207 L. Ed. 2d 1050 (2020) and *Duncan v. Bonta*, No. 19-55376, 2021 U.S. App. LEXIS 35256 (9th Cir. Nov. 30, 2021) needs to be overruled, changed or modified, with a new framework put in place consistent with the United States Supreme Court's upcoming decision in *New York State Rifle & Pistol Association, Inc., et al. v. Kevin P. Bruen, in His Official Capacity as Superintendent of New York State Police, et al.* Supreme Court of the United States Case No. 20-843 (open carry/concealed weapon carry case), and progeny thereto in *Association of New Jersey Rifle & Pistol Clubs, Inc., et al. v. Andrew J. Bruck, Acting Attorney General of New Jersey, et al.*, Supreme Court of the United States Case No. 20-

20

1507 (large-capacity magazine ban case), *George K. Young, Jr. v. Hawaii, et al.* Supreme Court of the United States Case No. 20-1639 (open carry case), and *Dominic Bianchi, et al., Petitioners v. Brian Frosh, Attorney General of Maryland, et al.* Supreme Court of the United States Case No. 20-1507 (semi-automatic firearm ban case). (These pending Supreme Court cases are hereinafter referred to as "*Pending Second Amendment Supreme Court Cases*".)

2. Whether slingshots are protected under the Second Amendment per *Caetano v. Massachusetts*, 577 U.S. 411 (2016) (per curiam).

3. Whether the Section 33850 **LEGR** process violates the Second Amendment, Fifth Amendment and Fourteenth Amendment (both Substantive and Procedural Due Process).

4. Whether Sections 16740 & 32310(c) (**Large-Capacity Magazine or "LCM"**) violates the Second Amendment.

5. Whether *§ 33850* LEGR process burdens Plaintiffs' rights under the Second Amendment.

6. Whether California's ban on magazines and handguns in common use throughout the United States violates the Second Amendment per the *Pending Second Amendment Supreme Court Cases.*

7.      Whether California's ban on modern handguns and common handguns excluded from the Roster of Handguns Certified for Sale in the state violates the Second Amendment.

8.      Whether California's general prohibition to carry a loaded handgun outside the home violates Californians' fundamental right to keep and bear arms for self-defense guaranteed by the Second Amendment.

9.      Whether California's grant of a lifetime right to honorably retired California peace officers to carry a concealed weapon and exempt them from the unsafe handgun ban and large capacity magazine ban violates the Equal Protection Clause of the Fourteenth Amendment when average citizens, including former military, are excluded from such privileges.

10.     Whether California's firearm laws, which exclude retired law enforcement officers, violate the Equal Protection Clause of the Fourteenth Amendment.

## STATEMENT OF THE CASE

This is a classic case of what happens when law enforcement stereotypes bikers because they fit a certain profile – riding a Harley Davidson with a horse leash hanging of the side of their bike called a slungshot (i.e ER-142-149) or a knife in a sheath on a leather vest called a concealed dirk or dagger (i.e. ER-183; ER-220). The only problem with this stereotype is that neither Plaintiff has ever

been arrested for any violation in their entire life. Both are blue collar skilled tradesmen and truckers. In addition to the stigmatizing event of being arrested for felonies, Plaintiffs they have been dragged through a legal gauntlet specifically leading to their disarmament in violation of their Second Amendment right to keep and bear arms.

The government, under color of California's laws, seized the arms of two men who have never had any contact with law enforcement, who have never been arrested (ER-16, Fifth Amended Complaint [FAC] ¶ 5; ER-101, Haven Decl. ¶ 2), who have never been on any watch list, and after law enforcement recognized the mistake, they hid behind a state law which says if you want your civil liberties back (i.e. return of "arms"), you have to fill out an application and pay a fee.

After the seizure and impoundment of their arms (slungshot, handguns, rifles, shotguns, ammunition, and magazines), they were told that the had to fill out a post arrest application for their return and that they had to pay a fee for their return even though they were never prosecuted for any alleged crime. There was never an allegation that the Plaintiffs' were not allowed to own or possess the arms which were seized. (See final order ER-8, lines 10-16.)

To make matters worse, they cannot even replace the arms seized because they are now banned in California, and it would be illegal to purchase such arms out of the state and transport them into the state; and this is how the People are

slowly being disarmed. (In general, see ER-102-104, Haven Decl. ¶ 11-19; and ER-14, Haven Decl. ¶ 18 in particular.)

Plaintiffs sought injunctive relief to enjoin Defendant and the State of California from enforcing laws, rules and regulations which:

> a. Limit plaintiffs' ability to keep, bear, and travel with off-roster handguns, which are legal under federal law.

> b. Limit plaintiffs' ability to possess, transport and purchase standard size handgun and rifle magazines which most exceed 10 rounds, as these are basic parts to modern operational and safe firearms.

> c. Limit plaintiffs' ability to travel interstate with magazines which contain more than 10 rounds of ammunition.

> d. Limit plaintiffs' ability to carry either a concealed weapon or openly carried weapon.

(ER-179, Cupp Decl. ¶ 101; ER-200, SAC ¶ 117; ER-216, SAC ¶ 274)(see generallyl ER-185, SAC ¶s 67, 116, 269, 273-274.)

## A. Slungshot - §§ 22210, 18010 and 22290

§ 22210 bans the possession of slungshots and is chargeable as a misdemeanor or felony. In addition, the government is charged with confiscating and destroying a slungshot per §§ 18010 and 22290.

A slungshot is a maritime tool consisting of a weight, or "shot," affixed to the end of a long cord, which pre-existed the founding of the United States. It was a simple weapon, which itself had been modified to become a slungshot. In sum, it

was an "arm" used prior to the invention of gunpowder." (ER-79, Third Amended Complaint [TAC] ¶ 145; ER-211, Second Amended Complaint [SAC] ¶ 221; ER-26 Fifth Amended Complaint [FAC] ¶ 86.)

Haven was unlawfully arrested for a <u>felony</u> by a Placer County Sheriff's Deputy on February 8, 2014, for illegally possessing a protected arm called a slungshot (a metal weight attached to a flexible handle for use as a weapon). (Order Granting Defendant Kamala D. Harris's Motion To Dismiss, ER-87; Second Amended Complaint, ER-211, ¶ 221; ER-26, Fifth Amended Complaint [FAC] ¶ 86.) "In Haven's common experience in life and in the Navy is that a "slungshot" was a maritime tool consisting of a weight, or "shot," affixed to the end of a long cord. After being arrested for a "slungshot", Haven had research what is a prohibited "slungshot" and his internet research uses the term interchangeably as a tool or arms, but a horse lead is not a slungshot." (Haven Decl. ER-131, ¶ 5.)

The slungshot was hanging from the handlebars of Haven's motorcycle, affectionately known as his "iron horse." (ER-26, FAC ¶s 88-89, and ER-44-46, Exhibit "C" to FAC is red and black duplicate of the "illegal weapon" HA VEN had hanging off his motorcycle handlebar. See also ER-149 as to what it looks like as a motorcyclist rides down the road with the slungshot attached.)

25

In sum, it is an undisputed fact that "[t]he slungshot has a long tradition and history of use as an arm protected by the Second Amendment." (ER-26, FAC ¶s 86-87)

After this unlawful felony arrest, a misdemeanor complaint against Haven was filed, and ultimately dismissed while his slungshot was destroyed by the government. This arrest and destruction of his arms infringed upon his constitutional rights because the Second Amendment "protects all 'arms' and is not just applicable to firearms" which are suitable for self-defense purposes and which are not dangerous and unusual.

### B. Law Enforcement Gun Release (LEGR) Process - *§ 33850*

Cupp was unlawfully arrested for a <u>felony</u> by Citrus Heights police officers on March 25, 2014, for carrying a concealed knife in violation of C.P.C. § 21310. (01/26/2022 Order, ER-49, lines 3-9, 13-17; 09/24/20 Order ER-47; ER-167, Cupp Decl. ¶s 13-18; ER-203, SAC ¶s 139-144, ER-21, FAC ¶s 37-44, 115-121; ER-77, TAC ¶s 120-126.) and the officers then searched his home without a warrant and illegally seized six firearms, ammunition, magazines, and two non-folding hunting knives. (*Id*. ¶ 120.) The district attorney dismissed the case against Cupp two months after his arrest and Cupp's two knives were returned to him in court, but his firearms and "other firearm related tools and equipment" were not returned. (01/26/2022 Order, ER-49, lines 3-9, 13-17; ER-77, TAC ¶ 124.)

On February 14, 2016, a Sacramento County Sheriff's Deputy searched Haven's residence without a warrant and without probable cause and seized three firearms, ammunition, and magazines. The three firearms and magazines seized are now banned in California – but not at the time of legal purchase through an FFL. Haven was never arrested and because no criminal charges were ever filed, Haven could not even obtain a copy of any police report because the answer was an active investigation. The unlawful confiscation of Haven's firearms, magazines and ammunition violates his Second Amendment rights *per se*. (ER-101, Haven Decl. ¶s 6-12; 01/26/2022 Order, ER-49, lines 13-17; ER-22, FAC ¶s 45-50; ER-78, TAC ¶s135-139; see also SAC ¶s 185-189.)

There is no mechanism for the return of arms without the payment of a fee and forced confession (i.e., signing an application with detailed firearm information under the penalty of perjury while criminal charges can still be instituted within the Statute of Limitations). The § 33850 Application for Return form and payment of fees is the only method for return of arms, even if illegally confiscated by law enforcement. (ER-22, FAC ¶s 51-65) In addition, if the magazines are now banned, and the handguns are not on the safe gun list, then it is impossible to replace the confiscated arms legally.

C. Large-Capacity Magazine (LCM) - *§ 16740, § 32310*

California amended Penal Code section 32310 to prohibit the mere possession of "large-capacity magazines." S. 1446, 2015-2016 Reg. Sess. (Cal. 2016). Then, on November 8, 2016, voters approved Prop. 63, which effectively did the same. See Cal. Penal Code § 32310. Under either version, anyone currently in possession of a now-banned magazine will be exposed to criminal penalties. *Id.*

Plaintiffs are law abiding citizens who have had their LCMs confiscated by law enforcement, even though they were legally owned at the time of confiscation. Now that they have been confiscated, they cannot be repurchased in the state because no one can legally sell them. In addition, if any LCM is purchased out of state, it is illegal to transport the LCM into the state. (ER-67 TAC ¶s 53-60, 70-75, 80)

### D. Unsafe Handgun List and Microstamping

California law presumes that all handguns are "unsafe" and therefore, generally barred from importation and sale, unless those handguns have been placed on the state's special roster of handguns "determined not to be unsafe." Cal. Penal Code § 31910.

As applied, the law results in creating unprecedented hurdles in the manufacture and sale of handguns in the state. This is accomplished by placing so many hurdles and burdens on manufacturers of handguns, that the simply ad ridiculous mechanisms to novel concepts to any newly manufactured firearm

28

which even exempts the police from having to use such ridiculous handguns with increased complexity and increased failure rates, such as a magazine disconnect mechanism ("MDM") and chamber load indicator ("CLI") – both of which interfere with the functionality in critical moments. Both of these contradict common firearm safety rules: "Treat all guns as if they are loaded." In other words, consumers must learn to disregard CLIs and MDMs.

As of May 17, 2013, all semiautomatic handguns not already rostered cannot be submitted for roster listing unless they employ so called "microstamping technology."

As time marches on, handguns are forced off the roster as they are updated without CLIs, MDMs, and of course, the wholly fictional microstamping, without any new models taking their place. The effect is dramatic. The microstamping requirement, as written, and as applied, results in a disenfranchisement of "the People" to own and possess the best and safest possible arms available in 49 states.

The federal government has never mandated these draconian requirements on any firearm – and for good reason – it makes firearms more dangerous and less reliable. Micro-stamping technology is not a safety device and has no rational relationship to the safety of the owner/buyer/consumer of semi-automatic pistols. (ER-70, TAC ¶ 63, see also ¶s 62-69; ER-72-73, TAC ¶s 83-89; ER-59 ER-103-104.) Because California has banned some of the newest and safest handguns, all

of which have manual thumb safeties, California has in essence forced most antiquated unsafe handguns onto the public. (ER-73-74, TAC ¶s 85-89.)

### E. Carrying Concealed (CCW) and Open Carry Weapon (OCW)

California prohibits the open carry of a loaded firearm for purposes of self-defense. At the outset, Plaintiffs request a positive injunction to either be issued a lifetime CCW endorsement upon application at the same cost that retired officers pay or be permitted to carry a weapon openly. ER-216, SAC ¶ 275.

Plaintiffs' argument is straightforward: they assert that the State has violated the Second Amendment by enforcing against them the State's limitations on the open carry of firearms to those engaged in the protection of life and property, and on the concealed carry of firearms to those who can demonstrate an "good cause under an arbitrary and capricious standard.

### F. Procedural History and The District Court's Opinions

This case comes before this Court as an appeal from final orders granting Defendant's motion to dismiss for failure to state a claim and lack of standing, and a denial of a preliminary injunction and declaratory relief. (ER-4, Order of September 28, 2021; ER-47, Order of September 24, 2020; ER-83, Order of October 9, 2018, denying request for preliminary injunction; ER-85, Order of September 21, 2018.)

30

This case was commenced on March 11, 2016, and on Plaintiffs' own volition, a First Amended Complaint was filed. (ER-277.) The District Court granted the parties stipulation for leave of court to file a Second Amended Complaint ("SAC"). The SAC was filed on August 15, 2016. (ER-278, dkt. # 12.)

The Second Amended Complaint was the first pleading challenged by the Defendant by way of a Motion to Dismiss. (ER-279, dkt. # 18) The District Court granted Defendant's Motion to Dismiss with prejudice as to the Fourth, Fifth, Seventh, Eighth, Tenth, and Eleventh Cause of Actions.[4] The Fifth Claim For Relief was Cupp's Constitutional Challenge To State Law under the Fifth Amendment, and the Eight Claim For Relief was Haven's Constitutional Challenge To State Law Fifth Amendment.

There were various iterations of the same claims, and in the end, the District Court dismissed all claims raised in the three pleadings subject to this appeal.

On February 14, 2016, a Sacramento Deputy Sheriff , acting color of law and the authority of Defendant, and acting without a warrant or probable cause, illegally entered the residence of HAVEN, outside his presence and without his consent, and seized the property of HAVEN consisting of three firearms, including

---

[4] There were other causes of actions disposed of by way of the District Court's order. Those sections are not addressed in this Brief.

31

an AR-7 semi-automatic rifle and a standard issue military semi-automatic 1911. No criminal charges were ever filed, and the government has failed to return Haven's three firearms and ammunition. (ER-208, SAC ¶s 184-189)(Haven Sixth Claim for Relief (Fourth Amendment), Seventh Claim for Relief (Fourth Amendment), Eight Claim for Relief (Fifth Amendment))

Haven's Ninth Claim for Relief challenges § 22210 pertaining to slugnshots under the Second Amendment. (ER-210, SAC ¶s 217-236, see also Exhibit "B" attached thereto at ER-221) Haven's Tenth Claim for Relief challenges § 22210 pertaining to slugnshots under the Fourth Amendment. (ER-212, SAC ¶s 239-249)

Haven's Tenth Claim for Relief challenges § 22210 pertaining to slugnshots under the Fifth Amendment. (ER-213, SAC ¶s 252-262)

Plaintiffs' Twelfth Claim for Relief challenges the statutory scheme under the Equal Protection Clause of the Fourteenth Amendment whereby honorably retired California peace officers are automatically granted the right to carry a concealed weapon for life, and allowed to keep and possess handguns and high capacity magazines not available to the public. (ER-214, SAC ¶s 265-276)

Specifically, at the outset, Plaintiffs sought to obtain declaratory and injunctive relief to:

> a. To purchase and travel through California with off-roster handguns, which are legal under federal law.

32

> b. To possess and purchase and travel through California with standard size handgun and rifle magazines which most exceed 10 rounds,
>
> c. To travel interstate with magazines which contain more than 10 rounds of ammunition, and travel through California.
>
> d. To either be issued a lifetime CCW upon application at the same cost that retired officers pay or be permitted to carry a weapon openly.

(ER-171, Cupp Decl. ¶ 45; see also ER-174, Cupp Decl. ¶ 63; ER-200, SAC ¶s 116-119, ER-215 SAC ¶s 273-276)

"Plaintiffs seek injunctive relief to enjoin HARRIS and the State of California from enforcing laws, rules and regulations which interfered with their rights. (ER-32, FAC ¶ 274.)

In sum, it was crystal clear as to the relief being sought, and after three orders, ultimately, Plaintiffs case was dismissed *in toto*. (ER-4, Order of September 28, 2021; ER-47, Order of September 24, 2020; ER-83, Order of October 9, 2018, denying request for preliminary injunction; ER-85, Order of September 21, 2018.)

## SUMMARY OF THE ARGUMENT

This case is a classic example of the intended consequence of California's gun laws, and Defendant's interference with the right to keep and bear arms. It shows how "the People" in general, and Plaintiffs in particular, are disarmed with a work-around tapestry of laws nullifying the core holding in *Heller*. Moreover, the gun control laws of California

33

hit the poorest the hardest – but that is another argument for another day. As in this case, Plaintiffs firearms were accumulated over time, and to get them back, they are forced to pay more money for their return. Why, other than to make it painful to assert a constitutional right.

Plaintiffs are seeking to enjoin the State of California from passing and enforcing any more laws in general, and the specific code sections in particular, which interfere with the fundamental right of the People in general, and Plaintiffs in particular, to keep and bear arms which are not prohibited under federal law. Basically, Plaintiffs are seeking to enjoin California from violating the Second Amendment in perpetuity, which was clearly stated in the Second Amended Complaint at ER-185. (ER-193, SAC ¶ 67; ER-199-201 SAC ¶s 115-119; ER-215, SAC ¶s 269-275.)

Plaintiffs sought to enjoin Defendant from enforcing current firearm statutes which infringe upon their constitutional rights and for a return of their arms. Specifically, Plaintiff sought equitable relief protecting their right to keep and bear arms as follows: (a) To purchase off-roster handguns, which are legal under federal law. (ER-192.) (b) To possess and purchase standard size handgun and rifle magazines which most exceed 10 rounds. (ER-192.) (c) To travel interstate with magazines

which contain more than 10 rounds of ammunition. (ER-192-3.) (d) To either be issued a lifetime CCW upon application at the same cost that retired officers pay or be permitted to carry a weapon openly. (ER-192-3.) (ER-185, SAC ¶s 67; see also Plaintiffs' Requests for Preliminary Injunctions (ER-161, ER-127, and ER-95) and Third Amended Complaint (ER-61.)

Moreover, Plaintiffs assert an Equal Protection challenge to a system of exemptions for the very persons charged with enforcing gun laws against Plaintiffs'. (ER-200-201.) California's regulatory scheme results in a massive transfer of gun rights from the People to active and honorably retired California peace officers in several extremely specific ways. California allows officers to purchase and sell off-roster handguns and keep those weapons after retirement. Further, California law allows officers to possess and purchase standard size handgun and rifle magazines which exceed 10 rounds, called Large Capacity Magazines, and keep them after retirement. California law grants a lifetime CCW, without the costs and associated regulations applicable Plaintiffs. This has led to systemic abuse and a proliferation of firearms on the black market. (See ER-231 to ER-266)

35

In sum, the chief law enforcement officer of the State of California exempts its officers from the very same laws that the People are crucified under.

## ARGUMENT

The Supreme Court has long made clear that the Constitution disables the government from employing certain means to prevent, deter, or detect violent crime. The Ninth Circuit has erected an anomalous regime where all Second Amendment and Equal Protection challenges to firearms legislation is adjudged by a rational basis test not called a rational basis test. See *Pena v. Lindley*, 898 F.3d 969, 975 (9th Cir. 2018).

That result is deeply flawed, as demonstrated by the way the district court and this Circuit has treated *Heller*, and also cements a treacherous method of legal reasoning.

When Justice Brandeis observed that states are the laboratories of democracy, he didn't mean that states can experiment with the People's rights. See *New State Ice Co. v. Liebmann*, 285 U.S. 262, 311, 52 S. Ct. 371, 76 L. Ed. 747 (1932) (Brandeis, J., dissenting). But that's what California does here. The state bans magazines that can carry over ten rounds—a firearm component with a long historical lineage commonly used by Americans for lawful purposes, like self-defense. Indeed, these magazines are lawfully owned by millions of people nationwide and come standard on the most popular firearms sold today. If California's law applied nationwide, it would require confiscating half of all existing firearms magazines in this country. California nevertheless prevents its citizens from owning these magazines. But the Constitution protects the right of law-abiding citizens to keep and bear arms typically

36

possessed for lawful purposes. On en banc review, we should have struck down the law.

Contrary to the Second Amendment, however, our court upholds California's sweeping ban on so-called large capacity magazines. It can't be because these magazines lack constitutional protection. The majority assumes they are. And it can't be because the ban is longstanding. California's law is of recent vintage. Rather, the law survives because the majority has decided that the costs of enforcing the Second Amendment's promise are too high. The majority achieves this result by resorting to the tiers-of-scrutiny approach adopted by this court years ago. Under that balancing test, the government can infringe on a fundamental right so long as the regulation is a "reasonable fit" with the government's objective.

In reality, this tiers-of-scrutiny approach functions as nothing more than a black box used by judges to uphold favored laws and strike down disfavored ones. But that is not our role. While we acknowledge that California asserts a public safety interest, we cannot bend the law to acquiesce to a policy that contravenes the clear decision made by the American people when they ratified the Second Amendment.

…

The step one inquiry often pays lip service to *Heller*: it asks whether the law "burdens conduct protected by the Second Amendment," *United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013), "based on a historical understanding of the scope of the [Second Amendment] right," *Jackson v. City & Cnty. Of San Francisco*, 746 F.3d 953, 960 (9th Cir. 2014) (simplified). …

….

All this interest balancing is in blatant disregard of the Court's instructions. Nowhere in *Heller* or *McDonald* did the Supreme Court pick a tier of scrutiny for Second Amendment challenges. Nor did the Court compare the relative costs of firearms regulations to their potential public-safety benefits, adopt a sliding scale, look at alternative channels of self-defense, or see if there was a reasonable fit between the regulation and the state's objective. The absence of these balancing tools was not accidental. The Court made clear that such judicial balancing is simply incompatible with the guarantees of a fundamental right. Time and time again, the Supreme Court expressly rejected the means-end balancing

37

approach inherent in the two-step test applied by our court. We should have followed their directions.

BUMATAY, Circuit Judge, with whom IKUTA, and R. NELSON, Circuit Judges, join, dissenting in *Duncan v. Bonta*, No. 19-55376, 2021 U.S. App. LEXIS 35256 (9th Cir. Nov. 30, 2021)

*Heller*, *McDonald*, and *Caetano* command that the Second Amendment protects an individual right to bear arms outside the home with modern firearms commercially available to the general public within the United States. As made clear in the pleadings in this case, a system of granting rights and privileges to one class of citizens, and denying another class the same rights and privileges, is fraught with obvious abuse. (See exhibits attached to Second Amended Complaint, ER-113 ".. an emerging problem that …. law enforcement officers are purchasing and then selling firearms in possible violation of Federal law [but not California law]."; ER-116_120 "*Here's all of the guns the ATF took from Pasadena Police lieutenant's Sierra Madre home*"; ER-122-124 "*California law that lets cops buy 'off-roster' guns expanded to include more in law enforcement*"; ER-126; ER-232-266 *Search Warrant* for California law enforcement officers purchasing guns on the ban list, and reselling them on the open market allowed per state law.)

## I.      STANDARD OF REVIEW

### a.   De Novo Review on The Claims Dismissed

This appeal comes before this Court on **three orders to dismiss three operative pleadings**, a **Second**, **Third**, and **Fifth** Amended Complaint. Since the

facts alleged are taken as true; the asserted error in the district court does not consist of erroneous factual findings. This appeal comes before this Court because the lower court has refused to apply the facts in a light most favorable to Plaintiffs. The District Court, applying this Circuit's precedence, rubber stamped the dismissals of every single cause of action arising under Second, Fourth, Fifth, and Fourteenth Amendments. Fundamental individual rights no longer apply here in California. The lower court failed to view the pleadings in a light most favorable to Plaintiffs. Three decisions from Supreme Court clearly state the scope of the right to keep and bear arms under the Second Amendment, and the proper test to be applied. See *District of Columbia v. Heller*, 554 U.S. 570 (2008), *McDonald v. City of Chicago*, 561 U.S. 742 (2010) and *Caetano v. Massachusetts*, 577 U.S. 411 (2016) (per curiam).

This Court reviews *de novo* a grant of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  *Stone v. Travelers Corp.*, 58 F.3d 434, 436-37 (9th Cir. 1995).

### b.  Abuse Of Discretion for Denial of a Preliminary Injunction

"We review a district court's decision to grant or deny a preliminary injunction for abuse of discretion." *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1115 (9th Cir. 2011). We do not "determine the ultimate merits," but rather "determine only whether the district court correctly distilled the applicable rules of

39

law and exercised permissible discretion in applying those rules to the facts at hand." *Fyock v. Sunnyvale*, 779 F.3d 991, 995 (9th Cir. 2015).

Here, the abuse of discretion is established *per se* since the request for a preliminary injunction based upon the Second Amended Complaint was summarily denied for the following two reasons: 1) "Plaintiffs have no operative complaint on which to base their preliminary injunction motions. 2) "Furthermore, Plaintiff Haven's request for a preliminary injunction against Defendants Jones and Brucker is moot because the Sacramento County Sheriff's department no longer has Plaintiff Haven's firearms as they 'were deemed abandoned and disposed of, due to Haven's extended failure to claim them.' " (ER-83-84.)

Since the Second Amended Complaint was in fact the operative pleading which was dismissed based upon erroneous law and constitutional interpretation, this Court is free to grant the relief sought in the District Court.

## II. THE INDIVIDUAL PLAINTIFFS' STANDING IS SECURED

Impetus to this case arises from three specific, unrelated incidents, but share a common theme showing the legislative trickery to squeeze out of existence the Second Amendment.

It has long been the case that a plaintiff possesses Article III standing to bring a pre-enforcement challenge to a state statute which regulates the exercise of

40

a federal constitutional right and threatens a criminal penalty. "[I]t is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974).

The simple continued existence of the criminal penalty provision together with an absence of a defendant's disavowal of prosecution satisfies the requirement of a credible threat of prosecution. *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 128–129 (2007) ("Where threatened action by government is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat.").

The Plaintiffs do not just make allegations, they have each suffered factual particularized harm. They do not have to continuously have to be prosecuted in perpetuity to establish standing. The purpose of seeking injunctive relief is so that the same constitutional violations do not happen again.

Moreover, California's handgun ban (safe-gun list) and magazine ban (§§ 16740, 32310, 31910, 31615, 32000), which prohibits the possession of magazines capable of holding more than ten rounds, violates their Second Amendment rights as well as the Takings and Due Process Clauses of the United States Constitution. There is no possible way of purchasing the magazines or off-roster firearms in California, so

41

the standing is presumed (i.e., there cannot be a concrete plan to violate the law without the means to do so). Federal law prohibits the sale of handguns in a state where the purchaser is no a resident. Haven cannot purchase an off-roster handgun in California because no FFL will sell him one, and Cupp is not going to drive all the way back to South Dakota after the oil pipeline has been shut down and there is no work, just to purchase a handgun and drive into California with it, only to get arrested again and have that handgun confiscated.

Plaintiffs therefore contend there is an actual and present controversy between the parties and that they are presently and continuously injured by Defendants' enforcement of §§ 16740, 32310 (magazine ban), §§ 31910, 31615, 32000 (handgun ban) and §§ 25400, 25450, 25850 (carrying loaded weapon ban).

In addition, courts have found that sales restrictions directed at dealers inflict Article III injuries on putative handgun consumers. See *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 700 F.3d 185, 191-92 (5th Cir. 2012) ("NRA"); *Mance v. Holder*, No. 4:14-cv-539-O, 2015 U.S. Dist. LEXIS 16679, at *9-*11 (N.D. Tex. Feb. 11, 2015); accord *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 750-57 (1976); and see

42

*Lane v. Holder*, 703 F.3d 668 (4th Cir. 2012). As Judge Easterbrook

noted under similar circumstances, "Plaintiffs' claim . . . is direct rather

than derivative: every interstate sale has two parties, and entitlement to

transact . . . is as much a constitutional right of consumers as it is of

shippers—if it is a constitutional right at all." *Bridenbaugh v. Freeman-*

*Wilson*, 227 F.3d 848, 850 (7th Cir. 2000).

### III. THE SECOND AMENDMENT GUARANTEES A FUNDAMENTAL RIGHT TO OWN, POSSESS, CARRY, PURCHASE, AND ACQUIRE HANDGUNS, FIREARMS, AMMUNITION, MAGAZINES AND NON-LETHAL AND LETHAL ARMS OF ALL TYPES WHICH ARE COMMONLY USED FOR PERSONAL SELF-DEFENSE OR MILITIA PURPOSES OR BOTH

This is an <u>as-written</u> and <u>as-applied</u> challenge to the statutory scheme which

invariably results in the revocation of Plaintiffs core fundamental right to keep and

bear arms; and how the government confiscates the very arms protected without

any recourse to acquiring those arms after confiscation and destruction because

they are now banned and/or criminalized. At the same time, California law

enforcement (and retirees) are granted the full panoply of Second Amendment

rights (i.e. lifetime CCWs, the purchase and acquisition of handguns available in

48 other states and legal under federal law, and magazines holding more than 10

rounds of ammunition.)

Since "self-defense" is the core holding in *Heller*, there is no factual scenario whereby law enforcement officers should have free market access to the most modern handguns with standard 15 to 17 round magazines, which also have "functional" safety features, as compared the dangerous mandated features on modern handguns.

An example of a dangerous feature mandated by California law is the so-called "loaded chamber indicator", which makes no sense since the first tenant of gun safety is to treat every gun as if it is loaded, followed by always clear the weapon before handing it to someone, and always clear the weapon when receiving it from someone. When one of these three basic rules are not followed, you end up with a dead person on a movie set, such as in the case of Alec Baldwin. It is the responsibility of the person who has the weapon to make sure it is cleared, and not some third person.

In sum, this case represents how California's incremental approach to abolish the Second Amendment has come to fruition in an all too familiar form, and why this case clearly proves that government cannot be trusted every time the government claims "public safety."

Under California's highly regulated framework for firearms, law-abiding citizens can only have access to the most archaic types of firearms (e.g. revolvers

and rifles without any detachable magazine feeding device). Soon, these handguns will be removed from the list.

The Second Amendment is the only right which cannot be exercised without possession, access and ownership of a tool (i.e. gun, knife, taser, etc.) and as proven in this case, a person can be arrested for a horse leash known by the State of California as a "slungshot", Penal Code Section 22210. (See ER-221-225 for the slungshot Haven was arrested for, and which was also destroyed by the government.) See *McDougall v. Cty. of Ventura*, No. 20-56220, 2022 (9th Cir. Jan. 20, 2022).

Additionally, a person (Cupp) can be arrested for the open carry of a knife, (ER-219, Penal Code Section 21310[5]), and even when the charges are dismissed, the government keeps the firearms confiscated unless the citizen signs a Law Enforcement Gun Release Application while still possibly being subject to a criminal investigation which also includes the payment of fees for the return of wrongfully received property.

---

[5] Penal Code Section 21310 is not the subject to challenge on this appeal and is only referenced for purposes of context as to how CUPP's firearms and knives were confiscated, but when the criminal complaint was dismissed for lack of legal sufficiency, the knives were returned to CUPP while his firearms, ammunition and magazines have never been returned on the disposition date of May 30, 2014.

To exercise this right, it explicitly includes the right to have access to "arms" by way of purchase, gift or self-manufacture. Defendants presently employ and enforce a legal juggernaut of statutes, ordinances, and policies suppressing the Right to Keep and Bear Arms, in violation of the Second Amendment; in sum, the State of California blatantly snubs the United States Supreme Court's rulings in *District of Columbia v. Heller*, 554 U.S. 570 (2008), *McDonald v. City of Chicago*, 561 U.S. 742 (2010) and *Caetano v. Massachusetts*, 577 U.S. 411 (2016).

The key averment pertaining to the Equal Protection claim can be found at ER-185, SAC ¶ 66 [emphasis added], which states:

> When it comes to self-defense, providing retired peace officers with superior rights to that of ordinary law-abiding citizens does not further either an important or compelling state interest, and more importantly, since law enforcement can only use reasonable force in self-defense, then the hand-guns they use are presumptively the type of firearm protected by the Second Amendment.

Even the Supreme Court has cautioned lower courts on the scope of the Second Amendment's protection of arms of all types, and not just firearms. *Caetano v. Massachusetts*, 577 U.S. 411 (2016) (per curiam) (Supreme Court of the United States unanimously vacated a Massachusetts conviction of a woman who carried a **stun gun** for self-defense, negating the state's argument that a stun gun is not a protected arm under the Second Amendment since the technology was not available at the time the Second Amendment was ratified.).

## IV. CALIFORNIA'S STATUTORY AND REGULATORY SCHEME REGARDING ARMS IN COMMON USE VIOLATES THE SECOND AMENDMENT

The leading case to date is *Caetano v. Massachusetts*, 577 U.S. 411

(2016) (per curiam)

### A. Sections 22210 ("Slungshot") Violates the Second Amendment in That A "Slungshot" Is Arm in Common Use at The Time of Ratification, Is More of A Curio And Relic, But Still a Capable Arm to Be Used for Self-Defense as well as Curio for Expressive Purposes

The Second Amendment extends, prima facie, to all instruments that

constitute bearable arms, even those that were not in existence at the time of the

founding and that the Second Amendment right is fully applicable to the States.

*Caetano v. Massachusetts*, 577 U.S. 411 (2016) (per curiam).

#### a. Sections 22210 Violates the Second As-Written

The slungshot is a bearable arm protected by the Second Amendment.

The statute is *prima facie* unconstitutional as written.

#### b. Sections 22210 Violates the Second As-Applied

Defendant did not object to the arrest of Haven under the statute, and

in fact, prosecuted Haven and destroyed his slungshot. Therefore, the

definition of a slungshot has been expanded to include a horse leash, which

makes it an arm <u>as-applied</u>.

47

For all the above reasons, the law as-written and as-applied violates the Second Amendment.

### c. To the extent that Section 22210 Violates the Second Amendment, its companion, Section 18010 Violates the Second Amendment and the Taking Clause

Because Haven's slungshot, a protected arm was destroyed per law, the law calling for such destruction is unconstitutional. For all the above reasons, the law as-written and as-applied violates the Second Amendment.

### B. Section 33850 LEGR process Violates the Second Amendment in That It Unnecessarily Places a Burden on Anyone Who Had Their Arms, Magazines and Ammunition Illegally, Improperly or Mistakenly Seized by Law Enforcement

§§ 33850, 33855, and 33860 are disturbing. This is a slippery slope. Plaintiffs were punished for not paying a fee for arms which were illegally and wrongfully seized. It is no argument that a background check had to be conducted because one was conducted at time of arrest, and the serial numbers of the firearms were checked – with no hits.

Therefore, the argument that constitutional violation is nominal because the fee is small is offensive to the People and the Constitution ordained by them.

Even under a rational basis test, there is no conceavable argument as why a person who was wrongfully disarmed has to pay for the return of those arms. Haven was not even arrest or charged!

The LEGR process violates the Second Amendment and Due Process clause per se as applied in this case, and other similarly situated. For all the above reasons, the law as-written and as-applied violates the Second Amendment.

### C. Sections 16740 & 32310(c) (Large-Capacity Magazine or "LCM") Violates the Second Amendment

A total ban on the possession of magazines "in common use" by law-abiding citizens for self-defense plainly violates the Second Amendment. *District of Columbia v. Heller*, 554 U.S. 570, 627 (2008). The state can point to no justification—let alone one sufficient to withstand heightened scrutiny—for banning magazines lawfully and safely owned by tens of millions of Americans to defend themselves.

Cal. Penal Code § 32310, which banned all large-capacity magazines (LCMs), violated the Second Amendment because it imposed a substantial burden on a citizen's right to self-defense and to keep and bear arms since it banned on all types of LCMs and it applied to all firearms, including handguns that were self-defense weapons. Because the California ban on magazines holding more than ten rounds of ammunition, Cal. Penal Code § 32310 Limit plaintiffs' ability to possess,

49

transport and purchase standard size handgun and rifle magazines which most exceed 10 rounds, as these are basic parts to modern operational and safe firearms.

Meanwhile, law enforcement and retirees are exempted from the law.

For all the above reasons, the law as-written violates the Second Amendment.

### D. Defendant's Handgun Ban and Rostering Program Violates the Second Amendment by Restricting Access to Handguns of the Kind in Common Use for Traditional Lawful Purposes and for Service in the Militia

California law presumes that all handguns are "unsafe" and therefore, generally barred from importation and sale, unless those handguns have been placed on the state's special roster of handguns "determined not to be unsafe." Cal. Penal Code § 31910 limits plaintiffs', especially Haven's, ability to keep, bear, and travel with off-roster handguns which are legal under federal law. Cal. Penal Code § 31910. [6]

---

[6] A typographical error occurred in the pleadings in reference to Cal. Penal Code § 22210. Though correctly cited in the Second Amended Complaint, it was incorrectly identified as "12210, it was cited correctly at ¶ 230, 244, and 257, in addition to being incorporated into the pleading by way of the actual criminal complaint at ER-221. It can also be found at ER-80 of the Third Amended Complaint. The mistake was corrected in the Fifth Amended Complaint.

As time marches on, handguns are forced off the roster as they are updated without CLIs, MDMs, and of course, the wholly fictional microstamping, without any new models taking their place.

Furthermore, even the magazines for on-the-roster handguns are now banned. Ammunition magazines that can hold more than 10 rounds are ubiquitous in the United States, coming standard with approximately half of all firearms sold today. Estimates show that well over 100 million such magazines have been lawfully acquired in just the past quarter century; the clear majority of them, by law-abiding citizens who keep them for self-defense. To date, very few states have taken the extraordinary step of banning the possession of these commonly owned arms.

For all the above reasons, the law as-written and as-applied violates the Second Amendment.

### E. Defendant's Carrying Ban (Open and Concealed Carry of Arms In General, And Firearms In Particular) Burdens The Second Amendment Right To Bear Arms For Purposes Of Confrontation And Self-Defense

This issue is currently being decided by the Supreme Court, and based upon prior decisions, it is expected that California's laws must provide a method of carry in public, whether open or concealed, subject to narrowly tailored limitations, like large gatherings at sporting events where security is provided.

For all the above reasons, the law as-written and as-applied violates the Second Amendment.

## V. DEFENDANT'S HANDGUN ROSTERING PROGRAM VIOLATES THE FOURTEENTH AMENDMENT'S EQUAL PROTECTION CLAUSE

"[E]qual protection analysis requires strict scrutiny of a legislative classification only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class." *Wilson v. Lynch*, 835 F.3d 1083, 1098 (9th Cir. 2016) (quoting *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312, 96 S. Ct. 2562, 49 L. Ed. 2d 520 (1976) (per curiam) (footnote omitted)).

Here, the right to keep and <u>bear</u> arms is fundamental. Strict scrutiny applies. Active and retired law enforcement are permitted to purchase handguns and magazines not available to the public in general.

For all the above reasons, the law as-written violates the Equal Protection Clause of the Fourteenth Amendment.

## VI. DEFENDANT'S CCW EXEMPTION FOR HONORABLY RETIRED CALIFORNIA PEACE OFFICERS VIOLATES THE FOURTEENTH AMENDMENT'S EQUAL PROTECTION CLAUSE

As stated above, strict scrutiny applies.

Here, the right to keep and <u>bear</u> arms is fundamental. Strict scrutiny applies. Active and retired law enforcement are granted the lifetime privilege of a CCW

52

simply because the were agents of the government. The right to self-defense is also fundamental, and to give retirees a privilege not bestowed to the People is the most insidious form of government cronyism.

For all the above reasons, the law as-written violates the Equal Protection Clause of the Fourteenth Amendment.

## VII.   DEFENDANT'S LCM EXEMPTION FOR HONORABLY RETIRED CALIFORNIA PEACE OFFICERS VIOLATES THE FOURTEENTH AMENDMENT'S EQUAL PROTECTION CLAUSE

For the same reasons as forth in V. and VI., the LCM exemption violates the Fourth Amendment.

## VIII.  SECTION 33850 LEGR PROCESS IS AN UNCONSTITUTIONAL TAKING

Physically dispossessing owners of their firearms, magazines and ammunition, which is their private property, without just compensation from the government violates the Takings Clause. It is no answer that they can pay the government and fill out an application to get it all back. Whatever expectations people may have regarding regulation of their property, they do not expect it to be "occupied or taken away." *Horne v. Dep't of Agric.*, 576 U.S. 351, 359 (2015).

For all the above reasons, the law as-written and as-applied to Plaintiffs' violates the Taking Clause of the Fifth Amendment.

## IX.    SECTION 33850 LEGR PROCESS VIOLATES THE DUE PROCESS CLAUSE

Because it retroactively criminalizes and deprives owners of lawfully acquired firearms, ammunition, and magazines without advancing the government's interest in public safety, the confiscation ban violates the Due Process Clause. There is simply no reason to believe that physical dispossession of magazines from those, like Plaintiffs, who have safely and lawfully possessed them throughout the inquisition is somehow related to advancing the state's interest in public safety. Haven was not even charged with a crime when the government seized his arms. Cupp's knives were returned in court, but not the other arms.

## X. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS AND PLAINTIFFS HAVE ALREADY SUFFERED HARM IN PERPETUITY, AND WILL SUFFER IRREPARABLE HARM IF THE COURT DENIES RELIEF

Plaintiffs are likely to succeed on the merits after decisions are issued in the *Pending Second Amendment Supreme Court Cases*.

Plaintiffs also satisfy the other preliminary injunction requirements. Denial of a constitutional right is the quintessential irreparable injury, and the need for immediate relief is only more evident when the injury involves physical dispossession of property.

There is no public interest in inflicting a likely constitutional violation, especially when the status quo can be preserved with no demonstrable harm to anyone.

54

## CONCLUSION

Plaintiffs should have been given an opportunity to litigate their very substantial claims against Defendant in this matter. The motions to dismiss should be reversed, request for injunctive and declaratory relief be granted, and the matter remanded to the District Court to proceed in accordance with this Court's opinion and order, and in accordance with decisions in *Pending Second Amendment Supreme Court Cases*.

Dated this <u>Tuesday, February 15, 2022</u>

Respectfully submitted,

<u>/s/ Gary W. Gorski</u>
Gary W. Gorski
*Attorney for Appellants/Plaintiffs*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Statement of Related Cases Pursuant to Circuit Rule 28-2.6

**9th Cir. Case Number No. 21-16809**

The undersigned attorney states the following: I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

*Duncan v. Bonta*, No. 19-55376, 2021 (9th Cir. Nov. 30, 2021)

*Young v. Hawaii*, 992 F.3d 765 (9th Cir. 2021), this case is pending certiorari in *George K. Young, Jr. v. Hawaii, et al.* Supreme Court of the United States Case No. 20-1639.

Cases <u>outside this circuit</u>, but are pending before the <u>Supreme Court</u> with *Young* are:

*New York State Rifle & Pistol Association, Inc., et al. v. Kevin P. Bruen, in His Official Capacity as Superintendent of New York State Police, et al.* Supreme Court of the United States Case No. 20-843.

*Association of New Jersey Rifle & Pistol Clubs, Inc., et al. v. Andrew J. Bruck, Acting Attorney General of New Jersey, et al.*, Supreme Court of the United States Case No. 20-1507.

*Dominic Bianchi, et al., Petitioners v. Brian Frosh, Attorney General of Maryland, et al.* Supreme Court of the United States Case No. 20-1507.

**Signature** <u>/s/ Gary W. Gorski</u> **Date** <u>Tuesday, February 15, 2022</u>

.

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Certificate of Compliance for Briefs

I am the attorney or self-represented party.

**This brief contains 13,834 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief complies with the word limit of Cir. R. 32-1.

**Signature** /s/ Gary W. Gorski     **Date** Tuesday, February 15, 2022

# CERTIFICATE OF SERVICE

## Certificate of Service for Electronic Filing

**9th Cir. Case Number: 21-16809**

I hereby certify that I electronically filed the attached document on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Signature** /s/ *Gary W. Gorski*  **Date:** Tuesday, February 15, 2022